UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUANE ALLEN MILLS,

                Petitioner,

v.                                    CASE NO. 08-14778
                                    HONORABLE DENISE PAGE HOOD

BLAINE LAFLER,

                Respondent.

_____/

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION AND DECLINING TO GRANT A CERTIFICATE OF APPEALABILITY, BUT GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Petitioner Duane Allen Mills has filed a *pro se* habeas corpus petition challenging his state conviction for two counts of first-degree criminal sexual conduct. Petitioner claims that his trial and appellate attorneys were ineffective, that the prosecutor committed egregious misconduct, that the trial court deprived him of counsel of choice and effective assistance of counsel by denying his motion for a continuance, and that his sentence was unfair. Respondent argues in an answer to the habeas petition that three of Petitioner's claims are barred by the doctrine of procedural default and that the other two claims lack merit The Court agrees that Petitioner is not entitled to the relief he seeks. Consequently, the habeas petition will be denied.

## I.  BACKGROUND

### A.  The State Court Proceedings

#### 1.  The Charges, Trial, and Sentence

Petitioner was charged in Oakland County, Michigan with two counts of first-degree criminal sexual conduct.  The charges arose from allegations that Petitioner performed cunnilingus on his stepdaughter and inserted his finger in her vagina in June of 1998.  The victim was fifteen years old at the time.  She did not disclose the abuse to her mother or contact the police until April of 2004 when she was twenty-one years old.  She testified at Petitioner's trial about four months later that Petitioner began to sexually  abuse her when she was eight or nine years old.  The abuse occurred about once a week and involved inappropriate touching or oral sex.  On one occasion, Petitioner had sexual intercourse with her and, on another occasion, he attempted anal intercourse.  The victim claimed that she did not initiate the sexual activity, nor consent to it, and that she had tried to avoid Petitioner.  She testified that Petitioner would become angry if she refused his advances and that he had threatened her by saying that her circumstances would be like they were when she lived with her father if she told anybody about their sexual activity.  She understood this to mean that she and her mother would be poor again if she told anyone what Petitioner was doing to her.  Before eventually disclosing the abuse to her mother, the victim:

> told "a couple of her friends" about the assaults when she was in the ninth grade.  Jamie Gerendasy, one of the victim's friends, testified [at trial] that she never saw [Petitioner] inappropriately touch the victim, but heard [Petitioner] make derogatory comments, heard [Petitioner] ask the victim to reveal her breasts once or twice, and saw [Petitioner] "smack" the victim's buttocks a couple of times.  Gerendasy also indicated that, when she and the victim were in the ninth grade, the victim told her and two others about the alleged sexual abuse by [Petitioner], and that she and the victim subsequently discussed it "a number of times."  Crystal Stafford, a longtime friend of the victim, indicated that she lived in [Petitioner] house for about nine months, from late 1999 until January 2000.  Stafford never saw [Petitioner] inappropriately touch the victim, but, on five occasions, observed the victim coming out of a room where the victim and [Petitioner] had been

2

> alone, seemingly distraught, "wanting to be alone," "fixing her clothes," and "crying or wiping tears away." Stafford indicated that she and the victim discussed the victim's "sexual concerns" involving [Petitioner], and the victim requested that she not disclose the information.
>
> . . . .
>
> The victim's mother testified that she had seen [Petitioner] "pinch" the victim's breast on 20 to 30 occasions throughout the years, and the victim would pull away.  Both the victim and her mother indicated that [Petitioner] often called the victim derogatory names, including "Pontiac hoe," stupid, and slut.  The victim's mother testified that, although she suspected something, when she questioned the victim, the victim indicated that "it was just playing."

*People v. Mills*, No. 258071, 2006 WL 515446, at *2 (Mich. Ct. App. Mar. 2, 2006).

Petitioner did not testify, but he presented four witnesses, including his former wife,

Christina Mills, and his biological daughter, Crystal Mills, who

> denied seeing inappropriate touching, or hearing any inappropriate comments between [Petitioner] and the victim, and indicated that the victim never avoided [Petitioner].  Crystal testified that [Petitioner] never asked the victim to expose herself, but noted that the victim would flash her chest to [Petitioner] and others, and initiate contact with [Petitioner,] including smacking his buttock, grabbing his chest, and punching his butt.  She explained that the victim's actions would irritate [Petitioner].

*Id.*

On August 12, 2004, an Oakland County Circuit Court jury found Petitioner guilty,

as charged, of two counts of criminal sexual conduct in the first degree.  *See* Mich. Comp.

Laws § 750.520(b)(1)(b)(i) (sexual penetration of a person who is thirteen, fourteen, or

fifteen years old by a person who is a member of the same household).  The trial court

sentenced Petitioner to imprisonment for fifteen to thirty years.

### 2.  The Appeals

In an appeal of right, Petitioner argued that (1) the trial court erred by allowing the

prosecutor to elicit evidence of other uncharged acts, (2) the prosecutor engaged in

3

misconduct and trial counsel was ineffective for failing to object, and (3) the sentencing guidelines were erroneously scored and his sentence violated the Sixth Amendment. The Michigan Court of Appeals rejected Petitioner's claims and affirmed his convictions and sentence in an unpublished, *per curiam* opinion. *See People v. Mills*, No. 258071 (Mich. Ct. App. Mar. 2, 2006). Petitioner raised the same claims and four new issues in a *pro se* application for leave to appeal in the Michigan Supreme Court. One of the new issues was Petitioner's fourth habeas claim, which alleges that the trial court improperly denied Petitioner's motion to adjourn the trial date. On September 26, 2006, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Mills*, 477 Mich. 866; 721 N.W.2d 185 (2006) (table).

Petitioner subsequently filed a motion for relief from judgment which alleged ineffective assistance of counsel, prosecutorial misconduct, improper denial of a request for an adjournment of trial, and disproportionate sentence. The trial court denied Petitioner's motion in a reasoned opinion, and the Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). On October 27, 2008, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Mills*, 482 Mich. 1032; 769 N.W.2d 197 (2008) (table).

### B. The Habeas Petition and Responsive Pleading

Petitioner filed his habeas corpus petition pursuant to 28 U.S.C. § 2254 on November 13, 2008. The grounds for relief are:

    (1)    appellate counsel was ineffective for failing to present each habeas issue in the appeal of right;

    (2)    trial counsel's acts and omissions amounted to ineffective assistance of counsel;

4

(3)     the prosecutor engaged in egregious misconduct;

(4)     the trial court unfairly denied counsel's motion for an adjournment or continuance of trial; and

(5)     the trial court imposed a sentence on the basis of a misrepresentation of facts.

Respondent argues that Petitioner's second, third, and fourth claims are procedurally defaulted because Petitioner raised those claims for the first time on state collateral review and the State's appellate courts denied leave to appeal pursuant to Michigan Court Rule 6.508(D).[1]  The United States Court of Appeals for the Sixth Circuit stated last year that brief orders citing Michigan Court Rule 6.508(D) are unexplained orders and ambiguous as to whether they refer to procedural default or a denial on the merits.  *See Guilmette v. Howes*, 624 F.3d 286, 289, 291 (6th Cir. 2010) (*en banc*).  The Court therefore must look to the last reasoned opinion to determine the basis for the state courts' rejection of Petitioner's claim.  *Id.* at 291.  If that opinion appears to rest primarily on federal law, courts must presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment in place.  *Id.* at 292.

---

[1] Michigan Court Rule 6.508(D) reads in relevant part:

(D) Entitlement to Relief. The defendant has the burden of establishing entitlement to the relief requested.  The court may not grant relief to the defendant if the motion

. . . .

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence . . . .

Mich. Ct. R. 6.508(D)(3).

5

The trial court rejected Petitioner's second, third, and fourth claims pursuant to Michigan Court Rule 6.504(B)(2), which states that a court must deny a motion for relief from judgment without directing further proceedings if it plainly appears from the motion and record that the defendant is not entitled to relief. The trial court did not refer to Rule 6.508 or to any other court rule or court decision when it denied Petitioner's motion for relief from judgment. This Court therefore presumes that the trial court adjudicated Petitioner's second, third, and fourth claims on the merits. *See Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 784-85, 178 L.Ed.2d 624 (2011) (stating that, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state law procedural principles to the contrary"). Even if Petitioner's claims were procedurally defaulted claims, procedural default is not a jurisdictional limitation. *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009), *cert. denied*, __ U.S. __, 130 S. Ct. 3274, 176 L.Ed.2d 1182 (2010). The Court therefore will proceed to adjudicate Petitioner's claims on the merits.

## II. STANDARD OF REVIEW

Habeas petitioners are entitled to the writ of habeas corpus only if the state court's adjudication of their claims on the merits

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

6

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 1519, 146 L.Ed.2d 389 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.*, 529 U.S. at 409, 120 S. Ct. at 1524.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*, 529 U.S. at 411, 120 S. Ct. at 1522. "[W]here factual findings are challenged, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct." *Goodwin v. Johnson*, 632 F.3d 301, 308 (6th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1) and *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (citing *Yarborough v. Alvarado*, 124 S.Ct. 2140 (2004)). To obtain a writ of habeas corpus, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

## III. DISCUSSION

7

## A.  Denial of a Continuance

Petitioner alleges that the trial court deprived him of a fair trial, due process of law, his right to retained counsel of choice, and his right to effective assistance of counsel when the court denied his request to adjourn the trial date.  The trial court adjudicated this claim in its order denying Petitioner's motion for relief from judgment.  The court stated that Petitioner had not established a constitutional violation or entitlement to relief because he did not explain, except in a vague and conclusory manner, how the denial of his request for a continuance prejudiced the defense or otherwise undermined the reliability of the verdict.

### 1.  Clearly Established Federal Law

A defendant in a criminal case has a right to the assistance of counsel in his defense.  U.S. CONST. amend. VI; *Faretta v. California*, 422 U.S. 806, 807, 95 S. Ct. 2525, 2527, 45 L.Ed.2d 562 (1975).  "[A]n element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him."  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144, 126 S. Ct. 2557, 2561, 165 L.Ed.2d 409 (2006).

> Where the right to be assisted by counsel of one's choice is wrongly denied, . . . it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation.  Deprivation of the right is "complete" when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received. To argue otherwise is to confuse the right to counsel of choice—which is the right to a particular lawyer regardless of comparative effectiveness—with the right to effective counsel—which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed.

*Id.*, 548 U.S. at 148, 126 S. Ct. at 2563.

> Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels

8

> against continuances except for compelling reasons. Consequently, broad
> discretion must be granted trial courts on matters of continuances; only an
> unreasoning and arbitrary "insistence upon expeditiousness in the face of a
> justifiable request for delay" violates the right to the assistance of counsel.
> *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S. Ct. 841, 849, 11 L. Ed. 2d 921
> (1964).

*Morris v. Slappy*, 461 U.S. 1, 11-12, 103 S. Ct. 1610, 1616, 75 L.Ed.2d 610 (1983); *see*

*also United States v. Cronic*, 466 U.S. 648, 661, 104 S. Ct. 2039, 2048, 80 L.Ed.2d 657

(1984) (explaining that not every refusal to postpone a criminal trial gives rise to a

presumption of ineffective assistance); *Chambers v. Maroney*, 399 U.S. 42, 54, 90 S. Ct.

1975, 1982-83, 26 L.Ed.2d 419 (1970) (declining "to fashion a *per se* rule requiring reversal

of every conviction following tardy appointment of counsel").

### 2. Application

Petitioner alleges that he retained attorney Ronald Gold to represent him. Mr. Gold

apparently could not attend a pretrial conference held on July 20, 2004. In his absence,

Joseph Vengalil, who worked at the same law firm as Mr. Gold, represented Petitioner.

Petitioner consented to the substitution of counsel. *See* Tr. July 20, 2004, at 3. At the

conclusion of the pretrial conference, Mr. Vengalil informed the trial court that he would be

asking for an adjournment of the trial, which was scheduled for August 9, 2004, because

Mr. Gold had another trial scheduled for the same day. The trial court stated that it would

deny the request and that the trial would proceed on August 9, 2004. The trial commenced

on August 9, 2004, with Mr. Vengalil representing Petitioner.

"[A] defendant wishing to substitute counsel must 'bring any serious dissatisfaction

with counsel to the attention of the [trial] court.'" *Benitez v. United States*, 521 F.3d 625,

632 (6th Cir. 2008) (quoting *United States v. Iles*, 906 F.2d 1122, 1131-32 (6th Cir. 1990)).

The record in this case does not reflect any objection to the substitution of Mr. Vengalil for Mr. Gold.  Furthermore, Mr. Vengalil appeared to be adequately prepared to represent Petitioner.  He made a pretrial motion to admit evidence of prior sexual conduct, and he gave an opening statement in which he indicated that the offense could not have occurred in the way the victim indicated.  He stated that the victim knew of certain tragic incidences in Petitioner's past, which would make him vulnerable to an accusation of criminal sexual conduct.  He also insinuated that the victim's accusation was motivated by her mother's attempt to obtain a favorable division of property during divorce proceedings.  Defense counsel later cross-examined and re-cross-examined prosecution witnesses, presented four defense witnesses, made a motion for directed verdict of acquittal, made a closing argument, and was successful in having the trial court read his version of a jury instruction on other "bad acts" evidence.

Petitioner has failed to show that the trial court's ruling deprived him of retained counsel of choice or of effective assistance of trial counsel.  Therefore, he has no right to relief on the basis of the trial court's denial of his motion for a continuance.

**B.  The Prosecutor**

Petitioner alleges that the prosecutor engaged in egregious misconduct by:

1.    insinuating in her closing argument that Petitioner abused his biological daughter, Crystal Mills;

2.    introducing hearsay;

3.    expressing her personal opinion during closing arguments;

4.    attacking his character;

5.    eliciting and arguing "bad acts" evidence;

10

6.      insinuating that defense witnesses would lie to protect Petitioner; and

7.      suppressing information.

Petitioner also alleges that the cumulative effect of the alleged errors violated his right to due process.

The Michigan Court of Appeals adjudicated Petitioner's claim about the alleged attack on Petitioner's character and concluded that the prosecutor's comment arguably was improper, but that it did not affect Petitioner's substantial rights.  The Court of Appeals noted that the remark was a brief portion of the prosecutor's arguments, that it was of minor importance, and that it was not so inflammatory as to prejudice Petitioner.  The Court of Appeals also stated that the trial court's instructions were sufficient to dispel any possible prejudice.

Petitioner raised his other claims about the prosecutor on state collateral review of his convictions.  The trial court adjudicated the claims on the merits and concluded that the prosecutor's comments were permissible argument and did not deprive Petitioner of a fair trial.

## 1.  Clearly Established Federal Law

Prosecutors may not use improper methods calculated to produce a wrongful conviction, *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 633, 79 L.Ed. 1314 (1935), but "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  To prevail on his claim, Petitioner must demonstrate that the prosecutor's conduct violated a specific constitutional right or infected the trial with

such unfairness "as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219, 102 S. Ct. 940, 947, 71 L.Ed.2d 78 (1982).

Courts in this Circuit employ a two-prong test for determining whether prosecutorial misconduct rendered a trial fundamentally unfair. *Slagle v. Bagley,* 457 F.3d 501, 515 (6th Cir. 2006) (citing *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001)). First, a court must ask whether the prosecutor's conduct or remarks were improper. *Id.* at 516. Second, if the conduct or remarks were improper, a reviewing court must consider whether the improper acts were so flagrant as to warrant reversal. *Id.*

### 2. Application

#### a. Comment on Crystal Mills

According to Petitioner, the prosecutor insinuated in her closing argument that Petitioner abused his biological daughter, Crystal Mills, who lived with Petitioner, his wife, and the victim on weekends. The prosecutor was summarizing the defense witnesses' testimony when she made the contested comments. She said:

> Then we hear from the defendant's daughter, Crystal Mills, who took the stand and . . . said she's friends with [the victim]. Of course. They lived together, they spent a lot of time together. But she didn't live there 24/7. She didn't have to deal with that man 24 hours a day seven days a week like [the victim] did. She got to escape for at least five of the days of the week.

(Tr. Aug. 12, 2004, at 472-73.)

These remarks could be interpreted to mean that Crystal Mills' testimony had limited

12

value because she was not aware of everything that occurred in Petitioner's household due to her not living there all the time. Crystal Mills, moreover, testified that Petitioner was cleared of charges that he sexually abused her. Crystal Mills also testified that Petitioner was living with her and her husband at the time of trial and that Petitioner had not touched her inappropriately at any time when she and the victim used to wrestle with Petitioner. (*Id.* at 422-24, 446-49.)

The Court concludes that the prosecutor's remarks were not improper. Even if they were, the remarks were not egregious in light of the other evidence, including testimony that Petitioner did not sexually abuse his biological daughter.

### b. Hearsay

Petitioner alleges that the prosecutor introduced hearsay when she asked Petitioner's wife whether Petitioner had molested his biological daughter (Crystal Mills) when she was a baby. This question was a proper follow-up question to defense counsel's question about the same allegations. Petitioner's wife, moreover, responded to the question by stating that the charges were dropped. (Tr. Aug. 9, 2004, at 274.) Thus, the question was not egregious even if it were improper.

Petitioner claims that the prosecutor also elicited hearsay when she asked Crystal Mills whether the victim had informed her that she was molested and whether Crystal had responded, "If you are talking about my dad, he didn't do it." (Tr. Aug. 12, 2004, at 445.) Defense counsel objected on grounds that the question was hearsay, that the prosecutor was relying on facts not in evidence, and that the question was a compound one. (*Id.* at 445.) Even if the Court were to assume that the question rose to the level of prosecutorial misconduct, the impropriety was not egregious. Crystal Mills did not answer the question,

13

and the prosecutor dropped the subject as soon as defense counsel objected.  The matter was not mentioned again, and the trial court informed the jurors at the close of the case that the attorneys' questions were not evidence.  (*Id.* at 504.)

### c.  Expressing a Personal Opinion

Petitioner alleges that the prosecutor expressed her personal opinion when she stated during closing arguments that the victim slept with one eye open, that the victim was afraid to sleep in her own home, and that Petitioner had covered his butt and another part of his body.  (*Id.* at *500-51.*)  The prosecutor also stated that she did not have to tell the jurors what Crystal Stafford, the victim's friend who also stayed at the home on occasion, had meant when Crystal Stafford testified that, any time the victim was alone with Petitioner, she would come out of the room wiping tears from her face and adjusting her clothes.  (*Id.* at 465, 470-71.)

A prosecutor "must refrain from interjecting personal beliefs into the presentation of his case," *United States v. Young*, 470 U.S. 1, 8-9, 105 S. Ct. 1038, 1043, 84 L.Ed.2d 1 (1985), and may not misrepresent the facts, *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000).  However, the remarks about Crystal Stafford's testimony were accurate (Tr. Aug. 9, 2004, at 296), and the remarks about the victim's fearfulness were reasonable inferences from testimony indicating that the victim often had friends sleep with her and that she avoided Petitioner as much as she could to prevent further abuse.  The prosecutor's remarks were proper because prosecutors may "argue the record, highlight inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence."  *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005).

The comment about Petitioner covering himself was based on testimony that the

14

only time Petitioner used a condom was when he penetrated the victim's vagina.  The prosecutor was speculating that Petitioner used a condom to avoid impregnating the victim and being identified as the person who was sexually involved with her.  Because the prosecutor's comment tended to point out the inadequacy of Petitioner's defense, the remark was not improper.

### d.  Alleged Character Attacks

Petitioner alleges that the prosecutor attacked his character by asking witnesses how old he and his first wife were when they married.  (Tr. Aug. 12, 2004, at 395.)  In her closing argument, the prosecutor also stated that Petitioner was in court for inappropriate dealings with teenagers and the fact that he dated his first wife at age fourteen and married her at sixteen "speaks volumes to me."  (*Id.* at 472.)  According to Petitioner, these remarks insinuated that he had inappropriate dealings with young females.

Prosecutors may not attack a defendant's character or make derogatory remarks about him, *Washington v. Hofbauer*, 228 F.3d at 699, but the prosecutor's comment that Petitioner was in court for inappropriate dealings with a teenager was true.  The remarks about Petitioner's first marriage were not so egregious as to deprive Petitioner of a fair trial.

### e.  Eliciting "Bad Acts" Evidence

Petitioner contends that the prosecutor relied on other "bad acts" evidence in her opening statement when she summarized the sexual acts Petitioner allegedly committed with the victim.  Petitioner also contends that the prosecutor admitted evidence of every insult or pinch inflicted on the victim during an unlimited time frame for the purpose of bolstering the victim's credibility.

15

Prosecutors may not attack a defendant's character with "bad acts" evidence to prove that the defendant committed the crime charged or had a propensity to commit the crime. *Washington v. Hofbauer*, 228 F.3d at 699; *Hodge v. Hurley*, 426 F.3d 368, 383-84 (6th Cir. 2005). They may, however, rely in good faith on the trial court's evidentiary rulings and make arguments in reliance on those rulings. *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008) (citing *United States v. Chirinos*, 112 F.3d 1089, 1098 (11th Cir. 1997)), *cert. denied*, __ U.S. __, __, 129 S. Ct. 1991, 173 L.Ed.2d 1093 (2009). Before trial, the trial court conducted a hearing on the prosecutor's motion to admit evidence of uncharged acts. The trial court granted the prosecutor's motion, but agreed to give the limiting jury instruction offered by defense counsel. (Tr. July 21, 2004, at 4.) The prosecutor's arguments and elicitation of "bad acts" evidence at trial were not improper because she relied in good faith on the trial court's ruling that the evidence was admissible.

Furthermore, during its charge to the jury, the trial court read the cautionary jury instruction provided by defense counsel. The instruction stated that evidence of improper sexual conduct for which Petitioner was not on trial could be considered only for the limited purpose of helping the jurors judge the believability of testimony regarding the acts for which Petitioner was on trial. The jurors were charged not to convict Petitioner because they thought he was a bad person, that he was likely to commit crimes, or because he was guilty of other bad conduct. (Tr. Aug. 12, 2004, at 511-12.) In light of this instruction, the prosecutor's conduct was not egregious even if it were considered improper.

### f. Insinuating that Witnesses Would Lie

Petitioner asserts that the prosecutor insinuated that defense witnesses would lie

16

to protect him.  The prosecutor asked defense witness Shaun Woods  whether Petitioner would soon be his father-in-law and whether he wanted to avoid having Petitioner get in trouble.  Woods admitted that Petitioner was his future father-in-law, and he stated that he did not want to see anybody get in trouble for something that he did not do.  (Tr. Aug. 11, 2004, at 333.)

The prosecutor asked Petitioner's friend, Joseph King, whether Petitioner was his good friend and whether he wanted to avoid having anything happen to Petitioner.  King acknowledged that Petitioner was his good friend and that he did not want to see anything happen to him.  (Tr. Aug. 11, 2004, at 360.)

Finally, the prosecutor asked Petitioner's former wife whether she would want to see her daughter (Crystal Mills) hurt by anything and whether her daughter would experience a great deal of pain if Petitioner were in trouble.  Ms. Mills responded that she definitely did not want to see her daughter hurt by anything and that, if Petitioner got in trouble, her daughter would experience pain but that she would heal.  (Tr. Aug. 12, 2004, at 406.)

Prosecutors may question witnesses for the purpose of exposing bias.  *See United States v. Abel*, 469 U.S. 45, 49, 105 S. Ct. 465, 467,  83 L.Ed. 2d 450 (1984) (holding that evidence of the defendant's and a witness's membership in a prison gang that required its members to lie and commit crimes to protect each other was sufficiently probative of the witness's possible bias towards the defendant to warrant its admission in evidence); *Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110, 39 L.Ed. 2d 347 (1974) (explaining that, "the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness").   The disputed questions in this case were

17

legitimate attempts to show that the defense witnesses were biased.  The questions were not improper.

### g.  Failure to Disclose Information

Petitioner alleges that the prosecutor failed to disclose the following comments, which the victim allegedly said to the prosecutor at Petitioner's sentencing:

> This isn't right, it wasn't supposed to be like this.  I never wanted it to be like this.  I don't want him to go to jail.  He doesn't deserve it.

The prosecutor allegedly responded,

> You'll get in trouble if you say something now; there's no turning back now.  Just say what I told you to say and it will all be over.

Brief in Support of Pet. for Writ of Habeas Corpus, at 24 and Ex. 1.

The Supreme Court explained in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), that the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Id.*, 373 U.S. at 87, 83 S. Ct. 1196-97.  "There are three components of a true *Brady* violation:  The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene,* 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948, 144 L.Ed.2d 286 (1999).  *Brady* applies to situations involving "the discovery, after trial of information which had been known to the prosecution but unknown to the defense."  *United States v. Agurs*, 427 U.S. 97, 103, 96 S. Ct. 2392, 2397, 49 L. Ed. 2d 342 (1976).

*Brady* obviously does not apply to information that is not wholly within the

18

> control of the prosecution. There is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose.
>
> *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (internal citations and quotations omitted).

*Owens v. Guida*, 549 F.3d 399, 415 (6th Cir. 2008), *cert. denied*, __ U.S. __, 130 S. Ct. 281, 175 L.Ed.2d 135 (2009).

There was nothing to disclose before or during trial, because the victim's alleged comments were not made until after Petitioner was convicted. Furthermore, the comments were not exculpatory. They expressed the victim's regret at Petitioner being sent to prison. Finally, it was Petitioner's biological daughter, who claimed to have heard the victim's and prosecutor's comments. Because the information was available to Petitioner from his own daughter, who testified in his behalf at trial, there was no *Brady* violation.

### h. Cumulative Effect of Errors

Petitioner alleges that the cumulative effect of the prosecutor's errors violated his right to due process and a fair trial. This claim lacks merit because "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Therefore, it cannot be said that the state court's decision was contrary to Supreme Court precedent. Constitutional errors that would not individually support habeas relief simply cannot be cumulated to establish habeas relief. *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005).

In conclusion, the prosecutor's comments and conduct for the most part were not improper, and even where they arguably were improper, they were not "so egregious as

19

to render the trial fundamentally unfair," *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982), particularly under the "'more stringent standards applicable on habeas review.'" *Durr v. Mitchell*, 487 F.3d 423, 441 (6th Cir. 2007) (quoting *Byrd v. Collins*, 209 F.3d 486, 539 (6th Cir. 2000)), *cert. denied*, 552 U.S. 1261, 128 S. Ct. 1652, 170 L.Ed.2d 361 (2008). The Court therefore declines to grant relief on the basis of Petitioner's prosecutorial-misconduct claim.

### C.  Trial Counsel

Petitioner alleges that his trial attorney deprived him of effective assistance of counsel by

1.   introducing evidence of a false accusation;

2.   demonstrating an inability to perform his duties due to an identity crisis;

3.   failing to object to the prosecutor's attack on Petitioner's character;

4.   failing to investigate Petitioner's claims regarding his wife's schedule and the victim's school records;

5.   failing to subpoena additional witnesses;

6.   failing to object at sentencing; and

7.   failing to request a cautionary jury instruction after the prosecution introduced hearsay testimony.

The Michigan Court of Appeals stated on direct review that the prosecutor's alleged denigration of Petitioner's character did not deprive Petitioner of a fair trial and, therefore, defense counsel was not ineffective for failing to object to the remarks.  The trial court adjudicated Petitioner's other claims about trial counsel and concluded that the reliability of the jury's verdict was not undermined by counsel's "identity crisis" or by his failure to

request a limiting instruction after a successful objection.  The trial court also rejected Petitioner's claims about trial counsel's failure to subpoena the employment and school records of prosecution witnesses and counsel's failure to call additional witnesses to testify about the victim's conduct toward Petitioner and their home life.  The trial court stated that the absence of such evidence did not prejudice Petitioner, nor undermine the reliability of the verdict.

### 1.  Clearly Established Federal Law

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  To establish deficient performance, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*, 466 U.S. at 687, 104 S. Ct. at 2064.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.*, 466 U.S. at 689, 104 S. Ct. at 2065.  ""[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  *Id.*, 466 U.S. at 690-691; 104 S. Ct. at 2066.

To demonstrate that counsel's performance prejudiced the defense, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, 466 U.S. at 694; 104 S. Ct. at 2068.  "This does not require a showing that counsel's actions 'more likely than not altered the

outcome.'" *Richter*, 131 S. Ct. at 792 (quoting *Strickland*, 466 U.S. at 693, 104 S. Ct. at 2068).   However, "[t]he likelihood of a different result must be substantial, not just conceivable."   *Id.* (citing *Strickland*, 466 U.S. at 693, 104 S. Ct. at 2067-68).   "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."   *Id.* at 788 (internal and end citations omitted).

### 2.  Application

#### a.  Evidence of a False Accusation

Petitioner alleges that his trial attorney was ineffective for eliciting testimony concerning a prior false allegation that he molested his biological daughter, Crystal Mills, years before trial.   Eliciting the testimony was reasonable trial strategy, because the implication was that not all criminal accusations are true.   Defense counsel used the evidence to suggest that the victim knew Petitioner was vulnerable to a charge of criminal sexual conduct due to the investigation of him for an incident involving his biological daughter.   No prejudice ensued in any event, because both Crystal Mills and her mother (Petitioner's former wife) explained that someone else was responsible for the sexual misconduct and that Petitioner was cleared of the charge.   *See* Tr.  Aug. 12, 2004, at 390 (Christina Mills); *id.* at 422-24 (Crystal Mills).

#### b.  Ability to Perform his Duties

Petitioner alleges that several of his trial attorney's remarks indicate that he was unable to perform his duties due to an identity crisis and a conflict of interest.   Defense counsel was a former prosecutor (Tr. Aug. 9, 2004, at 56) and, he claimed to be having an identity crisis when he mistakenly asked permission to approach the bench with defense

counsel. He meant to ask whether he could approach the bench with the prosecutor. (Tr. Aug. 11, 2004, at 309.) At other times, defense counsel referred to himself as "the people," and he referred to a defense exhibit as "the people's exhibit. (*Id.* at 310, 351; Tr. Aug. 12, 2004, at 430.) Petitioner interprets these remarks to mean that defense counsel operated under a conflict of interest. The remarks, however, were slips of the tongue, and the record indicates that defense counsel was a staunch advocate in Petitioner's behalf. There was no conflict of interest.

### c. Failure to Object to the Prosecutor's Remarks

Petitioner claims that his attorney should have objected when the prosecutor asked prosecution witnesses how old he and his first wife were when they got married. Petitioner also claims that defense counsel should have objected to the prosecutor's closing remarks that the victim had been scared and went to bed at night with one eye open, that Petitioner had inappropriate dealings with teenagers, and that Petitioner had covered his butt and another part of his body as well.

The prosecutor's comments were based on the testimony or were reasonable inferences from the testimony. The comments about the victim were based on testimony that the victim often had a girlfriend sleep with her and that she engaged in other evasive behavior in order to avoid Petitioner. The comment about Petitioner covering parts of his body was a reference to his use of a condom when he had sexual intercourse with the victim. The prosecutor was trying to show that Petitioner was attempting to evade detection by not impregnating the victim. Because none of the comments were improper or egregious, defense counsel was not ineffective for failing to object to them.

### d. Failing to Investigate

23

Petitioner asserts that defense counsel should have investigated his wife's employment and school records and the victim's school records at the time of the charged incident.  According to Petitioner, the investigation would have revealed that his wife took night classes for six months, not for three years as the victim claimed, and that the victim did not go on a family vacation in July of 1998 as she claimed to have done.[2]

The prosecution was not required to show the exact date of the charged incident. *See People v. Dobek*, 274 Mich. App. 58, 83; 732 N.W.2d 546, 564 (2007) ("Time is not of the essence, nor is it a material element, in criminal sexual conduct cases involving a child victim.").  Therefore, counsel's failure to obtain records to impeach the victim's testimony about the timing of the charged incident did not amount to deficient performance.

### e.  Failure to Subpoena Additional Witnesses

Petitioner contends that his attorney should have subpoenaed additional witnesses to describe his personal life and daily events involving him and the victim.  Defense counsel produced four witnesses, who testified that they did not notice any inappropriate behavior by Petitioner toward the victim.  The failure to produce additional witnesses who would have provided cumulative evidence does not establish ineffective assistance.  *Parker v. Allen*, 565 F.3d 1258, 1279 (11th Cir. 2009) (citing *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1324 n. 7 (11th Cir. 2002) (per curiam)), *cert. denied*, __ U.S. __, 130 S. Ct. 1073, 175 L.Ed.2d 901 (2010).

### f. Failure to Object at Sentencing

---

[2] The victim testified that she remembered the approximate date of the charged incident because she was on summer vacation from school and had not yet gone on an annual family camping trip in July.  (Tr. Aug. 9, 2004, at 214-15.)

24

Petitioner appears to allege that his attorney should have argued at sentencing that the trial court was relying on facts that Petitioner did not admit and that were not determined by a jury.  This claim is based on *Apprendi v. New* Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L.Ed.2d 403 (2004).

At Petitioner's sentencing, defense counsel objected to the scoring of two offense variables, and he asked the trial court to consider the fact that Petitioner had been a productive member of society with no prior record.   His failure to make an argument on the basis of *Apprendi* and *Blakely* did not amount to ineffective assistance, because the Michigan Supreme Court had already determined that *Blakely* does not apply to Michigan's indeterminate sentencing scheme.  *See People v. Claypool*, 470 Mich. 715, 730 n. 14; 684 N.W.2d 278, 286 n.14 (2004).

### g.  Failure to Request a Cautionary Instruction

Petitioner claims that his attorney should have requested a cautionary jury instruction after the prosecutor asked Crystal Mills whether the victim had informed her that she (the victim) was molested and whether Crystal had responded, "If you are talking about my dad, he didn't do it."  (Tr. Aug. 12, 2004, at 445.)  Although defense counsel did not request a cautionary jury instruction, he did object to the question, and before the trial court could rule on the objection, the prosecutor offered to "move on."  No further reference was made to the hearsay, and the trial court instructed the jurors at the close of the case that the attorneys' questions were not evidence.  (*Id.* at 504.)  Defense counsel's failure to request a cautionary instruction did not amount to deficient performance and did not prejudice the defense.

25

The Court concludes for all the reasons given above that defense counsel's performance was not deficient and that the alleged deficiencies did not prejudice the defense. The state courts' adjudications of Petitioner's ineffectiveness claims were objectively reasonable and neither contrary to, nor an unreasonable application of, *Strickland*.

### D. The Sentence

Petitioner alleges that the trial court based his sentence on inaccurate information. The essence of this claim is that the trial court inaccurately scored offense variable 12 of the Michigan sentencing guidelines and sentenced Petitioner on the basis of facts that he did not admit and that were not determined by a jury, in violation of *Apprendi* and *Blakely*.

The Michigan Court of Appeals adjudicated Petitioner's claim on direct review of his conviction and found no merit in it. The Court of Appeals stated that *Blakely* did not apply to Michigan's indeterminate sentencing scheme and that Petitioner's sentence was presumptively proportionate because it fell within the recommended sentencing guidelines.

In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S. Ct. at 2362-63. In *Blakely*, the Supreme Court stated that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303, 124 S. Ct. at 2537 (emphasis omitted). The Michigan Supreme Court and the United States Court of Appeals for the Sixth Circuit have held that *Blakely* does not apply to Michigan's indeterminate sentencing scheme. *See Montes v. Trombley*, 599 F.3d

26

490, 497 (6th Cir. 2010); *People v. Drohan*, 475 Mich. 140, 164; 715 N.W.2d 778, 791-92 (2006).    Furthermore, "[a] state court's alleged misinterpretation of state sentencing guidelines . . . is a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L.Ed.2d 606 (1990).    Therefore, Petitioner has no right to relief on the basis of his challenge to his sentence.

### E.  Appellate Counsel

Petitioner alleges that his appellate attorney was ineffective for failing to raise all his habeas claims on direct review.  To prevail on this claim, Petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064; *see also Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 764, 145 L.Ed.2d 756 (2000) (stating that the proper standard for evaluating the petitioner's claim about appellate counsel is that enunciated in *Strickland*).

Petitioner's appellate attorney did raise one claim of prosecutorial misconduct and one claim about trial counsel in the appeal of right.  Those claims pertained to the prosecutor's alleged attack on Petitioner's character and defense counsel's failure to object to the prosecutor's remark.  Appellate counsel also raised Petitioner's sentencing claim in the appeal of right.  Petitioner's other claims lack merit, and counsel was not required to raise all nonfrivolous claims on appeal if counsel, as a matter of professional judgment, elected not to raise the claims. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 3312, 77 L.Ed.2d 987 (1983).  In fact, "the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate

27

advocacy." *O'Sullivan v. Boerckel*, 526 U.S. 838, 858, 119 S. Ct. 1728, 1739, 144 L.Ed.2d 1 (1999) (quotation marks and end citations omitted).

Petitioner has not shown that the claims not raised in the appeal of right are "clearly stronger than issues that counsel did present" to the Michigan Court of Appeals. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010) (quotation marks and citations omitted).  Nor has he demonstrated "a reasonable probability that, but for his counsel's unreasonable failure to raise [his claims] on appeal, he would have prevailed."  *Id.* (quotation marks and citation omitted).  Consequently, appellate counsel was not ineffective.

## IV.  CONCLUSION; CERTIFICATE OF APPEALABILITY

The state courts' adjudications of Petitioner's claims did not result in unreasonable applications of the facts and were not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 131 S. Ct. at 786-87.  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* at 786 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75, 123 S. Ct. 1166, 155 L.Ed.2d 144 (2003)).  Accordingly, the petition for writ of habeas corpus [Docket No. 1, filed Nov. 13, 2008], is **DENIED**.

The Court declines to issue a certificate of appealability, because reasonable jurists, would not debate the Court's assessment of Petitioner's claims, nor conclude that his claims deserve encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000).  Petitioner nevertheless may proceed *in forma pauperis* on appeal if he decides to appeal this decision.

28

s/Denise Page Hood
United States District Judge

Dated:  June 30, 2011

I hereby certify that a copy of the foregoing document was served upon Duane Mills #507328, 10274 Boyer Road, Carson City, MI 48811 and  counsel of record on June 30, 2011, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager

29